UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

AUSTIN L. OKOCHA,

    Plaintiff,

-v-

JANI-KING, INC., AND
JANI-KING OF SEATTLE,

    Defendant(s)
_____/

AUSTIN AND ASSOCIATES, P.S.
BY: AUSTIN AGOMUOH, ESQ,
ATTORNEY FOR PLAINTIFF
907 EAST PINE STREET, SUITE 18,
SEATTLE, WA 98122
(206) 686-2183/(248) 212-5245
FAX (206) 568-8663
_____/

FILED ____ ENTERED
LODGED ____ RECEIVED
OCT 19 2001  KN
AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

C01-1688

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such transaction been previously filed and dismissed or transferred after having been assigned to a judge

## COMPLAINT AND JURY DEMAND

**NOW COMES** the Plaintiff, AUSTIN L OKOCHA, by and through his attorneys, AUSTIN AND ASSOCIATES, P S , by AUSTIN AGOMUOH and for his complaint against the Defendant, JANI-KING, INC , AND JANI-KING OF SEATTLE, state as follows

## JURISDICTION AND VENUE

Jurisdiction in this case is based on diversity of citizenship of the parties and the amount in controversy pursuant to 18 U S C 1332 Plaintiff is a citizen of the State of Washington. Defendant is a corporation incorporated under the laws of the State of Texas having its principle place of business in the State of Texas

## COMMON ALLEGATIONS

1  That defendant Jani-King, Inc., is a Texas Corporation qualified to do business in the State of Washington

2. That, at all relevant time, the following individuals have been employed by Defendant Jani-King, Inc., through its Principal office at Texas and through its Regional Office "Jani-King of Seattle."

   (a) Jefferey Polzer

   (b) Ted Looney

   (c) Larry Bennett

   (d) Bob Vennell

3  On or about December 30th, 1993, Plaintiff and Defendant entered into a franchise agreement. A copy of the agreement is attached to this complaint as Exhibit A

4. Plaintiff, Austin Okocha at all times intended to abide by the terms of the agreement

5. That Defendant Jani-King on or about July 14, 1999, unlawfully discontinued

2

its obligation under the agreement

6. That plaintiff made various attempts to continue performance but the defendant, rebuffed and or arrogantly refused all of plaintiff's attempts to continue the franchise relationship.

## COUNT 1

## BREACH OF FRANCHISE AGREEMENT/CONTRACT

7  Plaintiff repeats and re-alleges each and every allegation set forth in the paragraphs 1 through 6 as set forth herein in full

8  On or about December 30, 1993, Plaintiff and defendant entered into an agreement wherein defendant agreed to allow plaintiff to operate a business as a franchise of Jani-King, Inc  The term of agreement was for twenty (20) years from date of signing

9  Under the agreement, plaintiff was assigned a territory consisting of King, Snohomish, Kitsap and Island Counties  Plaintiff was allowed to operate within the above counties upon defendant's approval and of plaintiff's compliance with the terms and conditions of the agreement. Parties also agreed that defendant shall make efforts to assign contracted accounts to plaintiff

10  That Plaintiff at no time defaulted or failed to perform his services as specified under the agreement  In addition, that Plaintiff at all times made consideration as agreed by parties

11  On or about August, 1998, and based on the agreement, defendant assigned to

3

plaintiff the Allied Signal building Complex account That plaintiff performed janitorial services both at the evening and day shifts for the Allied account until July 14, 1999 when defendant discontinued the agreement

12. Under the agreement, plaintiff was liable for any losses associated with his presence in the building. Such liabilities included acts by his employees and those of other individuals brought into the building by the plaintiff

13 On or about July 13, 1999, while plaintiff and his employees were performing janitorial services at Allied building, Jeffery Polzer approached the plaintiff and introduced himself as a regional officer Right after, Mr Polzer immediately demanded to look around the building

14 At this time, Plaintiff had no idea who Mr Polzer was, nor was he notified that Polzer would be visiting the Allied at that time of the night Since that was against the company policies and procedures, plaintiff decided to seek the consent of the regional officers immediately regarding the matter

15 Plaintiff called Ted Looney and Larry Bennett, but was unable to reach either Then, Plaintiff calmly stated to Polzer that in his 5 years of operating a Jani-King franchise, the regional office had always informed him when a new employee would be visiting his facility. Further, Plaintiff stated that the issue of notification was especially necessary in that case considering the sensitive nature of the businesses in the building. Therefore, plaintiff informed Polzer that he (plaintiff) would need to get regional officer's consent before allowing him free access as a Jani-King employee

4

16 Finally plaintiff reminded Polzer of the company's policies and procedures and the need to be careful on who to let into the Allied building at night

17 Upon hearing the above, Polzer became irate and angry He started yelling and threatening the plaintiff that plaintiff would loose the building for disobeying his authority

18 Plaintiff attempted calling the building security, but Polzer immediately went away After a few minutes, Polzer came back and, again demanded to be let into the building Plaintiff refused him entrance Polzer then grabbed the plaintiff by his shirt As an act of self- defense, plaintiff equally grabbed polzer by his own shirt After an exchange of words, each released the other

19 Polzer immediately left the building However, just as he was leaving, he turned around and stated to the plaintiff that he (polzer) was going to ruin the Plaintiff financially. Further, he (Polzer) stated that he was going to make sure that the Allied account was taking away from the plaintiff He laughed and then went away

20 Plaintiff and his employees continued with the cleaning of the building However, a few minutes later, four police officers and an allied security officer approached the plaintiff They officers stated to them that polzer called them and stated that he was the plaintiff's boss Further, that Polzer complained that he was in the building to inspect the plaintiff's work That after his inspection of the building, plaintiff was unhappy with his (polzer) assessment and consequently resulted into violence

21 The officers interrogated the plaintiff and his employees separately. After a

while, they asked if the plaintiff had completed his night cleaning The officers waited for him to lock up his equipments and then walked the plaintiff to his car

22. The next morning, July 14, 1999, Plaintiff drove his employees back to Allied building for the day shift However, as he approached the entrance gate a security personnel informed him that Jani-King officer were interested in talking with plaintiff Plaintiff proceeded to the regional office while his plaintiff's employees went and started the day shift of the Allied building

23 On arrival at the regional office, Plaintiff met with Bob Vennell, Ted Looney, Larry Bennett and an individual introduced as a corporate officer from Dallas At the meeting, Plaintiff was asked to explain the previous nights event. He explained every thing to them

24 Plaintiff then tried to inquire why they sent Polzer at night without notifying him All the officers denied sending polzer for inspection. However, they acknowledged that they sent polzer there only to send a message to the plaintiff Finally they apologized to plaintiff for not notifying him about sending polzer to his facility

25 Then they advised Plaintiff to go home and wait to hear from them But before plaintiff left the regional office, they advised him not to worry, and that everything was a mistake, and that they were going to resolve it

26 At about 12 30 pm of the same day (July 14, 1999), Larry Bennett called the Plaintiff and stated to him that Allied sent the defendant a letter terminating plaintiff's service effective immediately Further, Mr Bennett stated that the

6

termination was based on "lack of performance," and not as a result of the previous night's event. Finally, he stated that plaintiff's employees were not allowed back in the Allied building at the end of that day's shift

27 Immediately after July 14, 1999, Defendant discontinued any and all communications with the Plaintiff That Plaintiff made various attempts to continue the relationship and even suggested to be re-assigned to another account, but defendant rebuffed each attempt and vehemently refused any further association with the plaintiff

28 That based on Polzer's false allegation, the State of Washington charged Plaintiff with Assault and Harassment

29 That, as plaintiff was trying to clear his name regarding the above case, Defendant hurriedly sold the Allied account to another franchisee. Further, that Polzer suddenly left Jani-King and became one of Jani-King's franchisees

30 That on the hearing date hearing for Plaintiff's assault case, Polzer, refused to appear before the court When the State prosecutor finally tracked him down, he claimed again falsely, that Plaintiff threatened his life, and that he (polzer) was scared of his life

31. Plaintiff at this time was only interested in cleaning his name and in subsequently regarding a franchise assignment with the defendant

32 The case against the plaintiff was ultimately dismissed

33 That by the above, Plaintiff has been unable to obtain an employment that would match the level of income he enjoyed while under the franchse

7

agreement with Jani-King, Inc That defendant has continued to rebuff plaintiff's continuing attempt to reconcile with the defendant.

34. That by the above, defendant's agents knowingly and recklessly blocked Plaintiff from continuing performance as was agreed by both parties That defendant did such with wanton disregard for plaintiff's rights under the agreement

35 Plaintiff had at all times intended to abide by all the terms and conditions set forth under the agreement. That Plaintiff made all required considerations. He continually performed his services as required and without default But that defendant has failed, neglected and omitted to comply, abide and in effect perform its own obligation under the agreement.

6  That Polzer's allegations were nothing but mere pretext on the defendant's part to intentionally and unlawfully deprive Plaintiff of his rights under the agreement. In addition, that by the above acts and or omission, defendant's agent's forcefully removed Plaintiff from the Allied account, failed to assign the plaintiff with accounts as agreed, failed to provide all other supports entitled to plaintiff as a franchisee, and ultimately discontinued the franchise agreement to the detriment of the plaintiff

37 That by defendant's refusal to comply with the terms and conditions of the agreement, plaintiff has suffered irreparable damages including loss of income, and mental anguish.

38. That by doing the above, defendant intentionally and with willful reckless and disregard for the terms and conditions as agreed by both parties, breached the

franchise agreement.

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc., for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000.00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT 11

## BREACH OF IMPLIED COVENANT OF GOODFAITH AND OF FAIR DEALING

39. Plaintiff repeats and re-alleges paragraph 1 through 38

40. That apart from the contractual rights as specified under the agreement, defendant owed plaintiff an implied duty of good faith and fair dealing in their business relationship The implied duty required a good faith effort by the defendant to abide by the terms of the agreement and to protect the existence of the agreement In addition, defendant had a duty not to intentionally abridge or infringe on Plaintiff's right to perform or abide by the terms of the agreement

41. That as the franchisor in this relationship and therefore defendant had the superior position especially since plaintiff was a small sole proprietor that relied entirely on the protection, support and guidance of the defendant. That in this unequal relationship with plaintiff, the, defendant had the upper hand

42. When defendant's regional officers sent polzer to the Allied building, they

9

were aware that polzer was a new employee, and therefore, are required to inform the plaintiff about polzer. That defendant usually informed plaintiff about a new employee visiting his facility prior to the visit That defendant failed to adequately inform polzer about procedures for visiting franchise especially if the visit was to be at night

43 That even with polzer's interference, Plaintiff completely performed his night service on the previous night. Further, that plaintiff's employees performed their day cleaning services as required and without complaint.

44 That on or about July 14, 1999, defendant's agents advised plaintiff to go home and wait for their call. Later, they called plaintiff only to inform him that Allied terminated his services for non performance

45 That by the above, Plaintiff performed at all relevant times

46. That by terminating plaintiff's services of Allied account, and subsequently of the entire agreement, defendant clearly breached the implied covenant of good faith that it owed plaintiff under the franchise agreement

47 Plaintiff was assigned the Allied account on or around August, 1998 And prior to that plaintiff adequately performed his duties as a Jani-King franchisee for the previous five years. Therefore, for Defendant to terminate plaintiff from Allied account and to immediately sell off the same Allied account to another franchise clearly allude to defendant's lack of interest in protecting plaintiff's business relationship

48. By the above, Defendant knowingly and with wanton recklessness failed in providing plaintiff with the implied covenant of good faith that is inherent in a

contractual relationship as in the one herein

49. In acting with knowing breach of the implied good faith, defendant intended and did injure the Plaintiff.

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc., for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000 00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT III

### INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP

50 Plaintiff repeats and re-alleges paragraphs 1 through 49

51 At all times, plaintiff performed his services without interfering with defendant's business relationships

52 That on or about July 13, 1999, Defendant's agents Ted Looney and Jeffery Polzer intentionally approached plaintiff's employees and asked them how much plaintiff was paying them During the discussion, the above individuals told plaintiff's employees that they would make more money by working for the regional office instead of the plaintiff Then, they handed the plaintiff's employees a note bearing their name(s) and phone number(s), and asked plaintiff employees to call them for a job at the regional office

53 On or about July 14, 1999, the regional officers advised the plaintiff to go home and wait for their call They also stated to him that he should not worry, that they

were going to resolve the issues However, they called plaintiff only to terminate his services for what they allegedly termed as a "non performance"

54 Defendant contracted with Allied to provide janitorial services in its building Defendant in turn, assigned the said account to plaintiff based on the franchise agreement Therefore, if Allied actually intended to terminate the contract, it would have terminated it against the defendant However, herein, after plaintiff was removed from the Allied account, the contractual relationship between defendant and Allied remained inexistence That in fact, after plaintiff's termination, defendant quickly sold the account to another franchisee

55 At all times, Plaintiff performed his services as was required by the agreement. That although plaintiff was advised to go home and wait for their call, Plaintiff's employees where inside Allied building performing their regular day services In effect, plaintiff performed at all times relevant

56. That, Plaintiff made various attempts to be re-assigned to other accounts, but defendant's agents vehemently refused to continue their relationship with the plaintiff

57. That by pressuring plaintiff's employees to leave the plaintiff and come to work for the regional office, defendant's agents improperly intended and did interfere with plaintiff's business expectancy. Further, that by informing plaintiff that Allied terminated his account for non-performance, and to then turn around and sale off the said account to another franchisee, defendant had interfered with plaintiff's business expectancy and relationships

58 That defendant's act and or omission were intentional and unprivileged That the above acts or omissions interfered with plaintiff's business relationships and thus,

12

caused the plaintiff to suffer irreparable damages including but not limited to loss of income.

59 That Defendant intentionally and with willful and reckless disregard for plaintiff's business relationships, forced plaintiff out of the Allied account, refused to assign another accounts to plaintiff and unlawfully discontinued the franchise relationship without a default on the part of the plaintiff By doing so, defendant damaged the plaintiff irreparably.

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc., for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000.00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT IV

## DECEIT, FRAUD AND MISREPRESENTATION

**60.** Plaintiff repeats and re-alleges paragraph 1 through 59

61. That at all relevant times, Plaintiff performed his services as agreed under the agreement.

62 On or about July 13, 1999, defendant's agents sent a new employee to Allied building and intentionally failed to notify plaintiff about polzer's visit. Prior to above date, plaintiff was usually notifies about visits by new employees. Therefore, for plaintiff to seek the regional office's consent prior to letting Polzer in to the building was an act well within the company procedures especially considering the sensitive nature of Allied

building

63 Allied account generated good income for the plaintiff, and that regional office was in possession of plaintiff's financial information and thus was privy to the amount of income he made from the Allied account

64 That by sending plaintiff home and later informing him that Allied terminated him for non performance, the regional officers made false representations with the intent and purpose to deceive Plaintiff and to induce him into believing that Allied terminated the account based on his non performance

65 That even when Defendant's agents stated to plaintiff that they were going to resolve the situation, they knew that plaintiff believed their promises to resolve issues amicably to be true, and that he justifiably relied on such promises by going home as advised, and by leaving his employees in Allied building to complete that day's shift. Nevertheless, defendant's agents cancelled such true intent from the plaintiff

66. That by acting fraudulently and deceitfully, as set forth herein, defendant's regional officers intended and did vex, annoy and injure plaintiff

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc , for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000 00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT V

## DEFAMATION

67 Plaintiff repeats and re-alleges paragraphs 1 through 66

68 On or about July 13, 1999, defendant's agent polzer confronted plaintiff at Allied building and demanded to be let into the building. Since plaintiff neither knew polzer nor was informed that polzer (a new employee) would be visiting the building, he refused Polzer entry until he (plaintiff) receives clearance from the regional office.

69. As a result, polzer became angry and left. Plaintiff tried calling regional officers to verify the authenticity of polzer's assertion that he worked for defendant, but was unable to reach anyone

70. That few minutes later, Polzer returned and again demanded to be let into the building. This time, Plaintiff reminded him of company's policies and procedures in such a situation.

71 Polzer suddenly became violent and grabbed the plaintiff by his shirt To defend himself, plaintiff equally grabbed polzers shirt. That after exchanging few furious words, each individual left the other Right after, polzer stated to the plaintiff that he (polzer) was going to make sure that plaintiff looses the Allied account, and that he was going to ruin plaintiff financially Polzer then laughed and left

72 That Polzer called the police and falsely reported to them that he was Plaintiff's boss and that after inspecting plaintiff's work, Plaintiff was not happy and as a result, became violent

73 Four police officers arrived at the building just as plaintiff was finishing up with his evening duty and proceeded to questioning plaintiff regarding the above situation. After,

they allowed plaintiff to go home

74  That plainitff later received a citation from the Redmond police for assault and harassment resulting from the incident stated herein

75  That on the date of hearing, Polzer refused to appear in Court, and instead claimed that he was afraid of his life and that the plaintiff was trying to harm him

76  That plaintiff at all times was only interested in clearing his name and to continue his franchise relationship with the defendant, and therefore was not in a position to threatened polzer's life

77  The case against Plaintiff was ultimately dismissed

78  At all times relevant, Polzer was employed by the defendant, and that the regional office was aware that the State was prosecuting plaintiff based on polzer's allegations.

79  That, defendant's agent knowingly provided false information to State Prosecutors regarding plaintiff's events of July 13, 1999  That by the above, defendant's agent falsely imputed plaintiff's reputation

80  That as a direct and proximate result of the regional officer's action, plaintiff has sustained a loss of earnings, mental and emotional distress, humiliation and embarrassment

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc., for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000 00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT VI

## DISPARATE TREATMENT

81. Plaintiff incorporates by reference each and every allegation contained in Paragraph 1 through 80 as if each were fully set forth herein

82. That the constitution of the United States of America and the Washington State Civil Rights Acts prohibits discrimination and or discriminatory activities based on an individual's race, religion, color, sex or national origin

83. That Plaintiff is a member of the class protected under the above relevant laws

84. That Allied account provided substantial income for the Plaintiff, and that Defendant being privy to such information was aware of plaintiff's income figures from Allied account.

85. Defendant's agent unlawfully terminated plaintiff from Allied account, and discontinued the franchise relationship against the agreement of both parties

86. That the State prosecuted Plaintiff for assault and harassment As plaintiff was trying to clear his name from the above charges, defendant hurriedly sold the Allied account to a white franchise owner

87. That defendant's termination of plaintiff together with polzer's false allegation of assault and harassment were mere pretext to defendant's original intent to unlawfully deprive plaintiff of Allied account, and to transfer the ownership of the said account to a white franshisee

88. That as a result of the foregoing, plaintiff has suffered damages as set forth herein

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment

17

against defendant Jani-King, Inc., for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000 00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT VII

## RETALIATION

89. That the Plaintiff repeats and re-alleges each and every allegations set forth in Paragraph 1 through 88 as set forth herein in full

90. That the Defendant discontinued franchise relationship with Plaintiff on about July 14, 1999 on the belief that plaintiff was terminated by Allied. That defendant's agent falsely accused Plaintiff of assault and harassment in a case where he subsequently refused to testify before a court claiming that he was in fear of his life

91. That, following the events as described herein, defendant, discontinued any and all forms of communications and or relations with the plaintiff

92 That plaintiff made various attempts to receive another assignment and to re-establish a relationship with the defendant, but the defendant rebuffed each of those attempts

93 That as a direct and proximate result of defendant's wrongful termination of the franchise agreement, plaintiff has been caused to suffer a loss of earnings for which he is entitled to be whole

94 That the plaintiff has been further deprived of his right to engage in gainful employment by defendant's wanton and reckless disregard for plaintiff rights under the constitution

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc., for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000 00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just

## COUNT VIII

### INTENTIONAL INFLICTON OF EMOTIONAL DISTRESS AND ANGUISH

95  Plaintiff hereby incorporates by reference paragraph 1 through 94 as if each were fully set forth herein

96  That the acts and or omissions of defendant as set forth herein constituted outrageous and intolerable conduct.

97  That such actions were intentional

98  That as a direct and proximate result of such outrageous and intolerable conduct, plaintiff suffered and continues to suffer humiliation, embarrassment and a great mental and emotional anguish/distress

**WHEREFORE, PLAINTIFF** pray that this Honorable Court shall render judgment against defendant Jani-King, Inc , for an amount in excess of Two Hundred and Ninety-One Thousand ($291,000 00) Dollars to fairly compensate Plaintiff for his damages, together with interest, attorney fees and cost to be taxed and for such other relief as the Court may deem equitable and just.

DEMAND FOR JURY AND TRIAL IS HEREBY MADE

Respectfully submitted

AUSTIN & ASSOCIATES, P. S

By _____

AUSTIN AGOMUOH, ESQ
Attorney for Plaintiff
907 East Pine Street, Suite 18,
Seattle, WA 98122
(206) 686 -2183

Dated  10/18/2001